**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Hugo M Pando |
| Debtor 2 (Spouse, if filing) | Amandi D Pando |
| United States Bankruptcy Court for the: | District of New Jersey |
| Case number | 19-16431-JKS |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Partners for Payment Relief DE IV, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☑ Yes. From whom?  2005 Residential Trust 3-2 by Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Trustee

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Partners for Payment Relief DE IV, LLC<br>Name | FCI Lender Services, Inc.<br>Name |
| 920 Cassatt Road, Suite 210<br>Number    Street | PO Box 27370<br>Number    Street |
| Berwyn        PA        19312<br>City        State        ZIP Code | Anaheim Hills        CA        92809-0112<br>City        State        ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email  vhays@pprnoteco.com | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____          Filed on _____
MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __6__ __6__ __8__ __0__

---

**7. How much is the claim?**  $ _____ 87,704.62 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**    Real Estate Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ _____

Amount of the claim that is secured:    $ _____ 87,704.62

Amount of the claim that is unsecured:  $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____ 52,907.21

Annual Interest Rate (when case was filed) __6.50__ %

☐ Fixed

☑ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).** | *Check the appropriate box:* |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor. |
| | ☑ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/12/2019
                  MM / DD / YYYY


/s/ D. Anthony Sottile
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | D. Anthony Sottile | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent for Creditor | | |
| Company | Sottile and Barile, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 394 Wards Corner Road, Suite 180 | | |
| | Number        Street | | |
| | Loveland | OH | 45140 |
| | City | State | ZIP Code |
| Contact phone | 513-444-4100 | Email | bankruptcy@sottileandbarile.com |

**Mortgage Proof of Claim Attachment**                                                                                          **(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions

| PART 1: Mortgage and Case Information | | PART 2: Total Debt Calculation | | PART 3: Arrearage as of Date of the Petition | | PART 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 19-16431-JKS | Principal Balance: | 58,715.85 | Principal & Interest Due: | 50,444.59 | Principal & Interest | 687.62 |
| Debtor 1: | Hugo M Pando | Interest Due: | 26,526.15 | Prepetition fees due: | 2,462.62 | Monthly Escrow | - |
| Debtor 2: | Amandi D Pando | Fees, Costs Due: | 2,462.62 | Escrow deficiency for funds advanced: | - | Private Mortgage Insurance | - |
| Last 4 digits used to Identify | 6680 | Escrow deficiency for funds advance: | - | Projected Escrow Shortage | - | | |
| Creditor: | Partners for Payment Relief DE IV, LLC | Mortgage Insurance | - | Less funds on hand | - | Total Monthly Payment | 687.62 |
| Servicer: | FCI Lender Services, Inc. | Less total funds on hand: | - | Total Prepetition Arrearage | 52,907.21 | | |
| Fixed accrual/daily simple interest/other: | ARM | Total Debt: | 87,704.62 | | | | |

**PART 5:  Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual Due Date | Prin, Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 5/25/2011 | 424.01 | - | - | Payment Due - 5/25/2011 | 5/25/2011 | 424.01 | - | - | - | - | - | 58,715.85 | - | - | - | - |
| 6/25/2011 | 465.67 | - | - | Payment Due - 6/25/2011 | 5/25/2011 | 889.68 | - | - | - | - | - | 58,715.85 | - | - | - | - |
| 7/10/2011 | - | - | 21.20 | Late Charge Assessment | 5/25/2011 | 889.68 | - | - | - | 21.20 | - | 58,715.85 | - | - | 21.20 | - |
| 7/25/2011 | 459.64 | - | - | Payment Due - 7/25/2011 | 5/25/2011 | 1,349.32 | - | - | - | - | - | 58,715.85 | - | - | 21.20 | - |
| 8/9/2011 | - | - | 23.28 | Late Charge Assessment | 5/25/2011 | 1,349.32 | - | - | - | 23.28 | - | 58,715.85 | - | - | 44.48 | - |
| 8/25/2011 | 467.35 | - | - | Payment Due - 8/25/2011 | 5/25/2011 | 1,816.67 | - | - | - | - | - | 58,715.85 | - | - | 44.48 | - |
| 9/9/2011 | - | - | 22.98 | Late Charge Assessment | 5/25/2011 | 1,816.67 | - | - | - | 22.98 | - | 58,715.85 | - | - | 67.46 | - |
| 9/25/2011 | 468.20 | - | - | Payment Due - 9/25/2011 | 5/25/2011 | 2,284.87 | - | - | - | - | - | 58,715.85 | - | - | 67.46 | - |
| 10/10/2011 | - | - | 23.37 | Late Charge Assessment | 5/25/2011 | 2,284.87 | - | - | - | 23.37 | - | 58,715.85 | - | - | 90.83 | - |
| 10/25/2011 | 462.10 | - | - | Payment Due - 10/25/2011 | 5/25/2011 | 2,746.97 | - | - | - | - | - | 58,715.85 | - | - | 90.83 | - |
| 11/9/2011 | - | - | 23.41 | Late Charge Assessment | 5/25/2011 | 2,746.97 | - | - | - | 23.41 | - | 58,715.85 | - | - | 114.24 | - |
| 11/25/2011 | 469.90 | - | - | Payment Due - 11/25/2011 | 5/25/2011 | 3,216.87 | - | - | - | - | - | 58,715.85 | - | - | 114.24 | - |
| 12/10/2011 | - | - | 23.11 | Late Charge Assessment | 5/25/2011 | 3,216.87 | - | - | - | 23.11 | - | 58,715.85 | - | - | 137.35 | - |
| 12/25/2011 | 463.74 | - | - | Payment Due - 12/25/2011 | 5/25/2011 | 3,680.61 | - | - | - | - | - | 58,715.85 | - | - | 137.35 | - |
| 1/9/2012 | - | - | 23.50 | Late Charge Assessment | 5/25/2011 | 3,680.61 | - | - | - | 23.50 | - | 58,715.85 | - | - | 160.85 | - |
| 1/25/2012 | 471.62 | - | - | Payment Due - 1/25/2012 | 5/25/2011 | 4,152.23 | - | - | - | - | - | 58,715.85 | - | - | 160.85 | - |
| 2/9/2012 | - | - | 23.19 | Late Charge Assessment | 5/25/2011 | 4,152.23 | - | - | - | 23.19 | - | 58,715.85 | - | - | 184.04 | - |

Mortgage Proof of Claim Attachment: Additional Page    Exhibit A  Second mortgage  poc 4-1    Page 5 of 40    (12/15)

| | |
|---|---|
| Case Number: | 19-16431-JKS |
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 2/25/2012 | 472.49 | - | - | Payment Due - 2/25/2012 | 5/25/2011 | 4,624.72 | - | - | - | - | - | 58,715.85 | - | - | 184.04 | - |
| 3/11/2012 | - | - | 23.58 | Late Charge Assessment | 5/25/2011 | 4,624.72 | - | - | - | 23.58 | - | 58,715.85 | - | - | 207.62 | - |
| 3/25/2012 | 459.16 | - | - | Payment Due - 3/25/2012 | 5/25/2011 | 5,083.88 | - | - | - | - | - | 58,715.85 | - | - | 207.62 | - |
| 4/9/2012 | - | - | 23.62 | Late Charge Assessment | 5/25/2011 | 5,083.88 | - | - | - | 23.62 | - | 58,715.85 | - | - | 231.24 | - |
| 4/25/2012 | 474.20 | - | - | Payment Due - 4/25/2012 | 5/25/2011 | 5,558.08 | - | - | - | - | - | 58,715.85 | - | - | 231.24 | - |
| 5/10/2012 | - | - | 22.96 | Late Charge Assessment | 5/25/2011 | 5,558.08 | - | - | - | 22.96 | - | 58,715.85 | - | - | 254.20 | - |
| 5/25/2012 | 467.92 | - | - | Payment Due - 5/2012 | 5/25/2011 | 6,026.00 | - | - | - | - | - | 58,715.85 | - | - | 254.20 | - |
| 6/9/2012 | - | - | 23.71 | Late Charge Assessment | 5/25/2011 | 6,026.00 | - | - | - | 23.71 | - | 58,715.85 | - | - | 277.91 | - |
| 6/25/2012 | 475.93 | - | - | Payment Due - 6/25/2012 | 5/25/2011 | 6,501.93 | - | - | - | - | - | 58,715.85 | - | - | 277.91 | - |
| 7/10/2012 | - | - | 23.40 | Late Charge Assessment | 5/25/2011 | 6,501.93 | - | - | - | 23.40 | - | 58,715.85 | - | - | 301.31 | - |
| 7/25/2012 | 469.61 | - | - | Payment Due - 7/25/2012 | 5/25/2011 | 6,971.54 | - | - | - | - | - | 58,715.85 | - | - | 301.31 | - |
| 8/9/2012 | - | - | 23.80 | Late Charge Assessment | 5/25/2011 | 6,971.54 | - | - | - | 23.80 | - | 58,715.85 | - | - | 325.11 | - |
| 8/25/2012 | 477.70 | - | - | Payment Due - 8/25/2012 | 5/25/2011 | 7,449.24 | - | - | - | - | - | 58,715.85 | - | - | 325.11 | - |
| 9/9/2012 | - | - | 23.48 | Late Charge Assessment | 5/25/2011 | 7,449.24 | - | - | - | 23.48 | - | 58,715.85 | - | - | 348.59 | - |
| 9/25/2012 | 478.59 | - | - | Payment Due - 9/25/2012 | 5/25/2011 | 7,927.83 | - | - | - | - | - | 58,715.85 | - | - | 348.59 | - |
| 10/10/2012 | - | - | 23.89 | Late Charge Assessment | 5/25/2011 | 7,927.83 | - | - | - | 23.89 | - | 58,715.85 | - | - | 372.48 | - |
| 10/25/2012 | 472.19 | - | - | Payment Due - 10/25/2012 | 5/25/2011 | 8,400.02 | - | - | - | - | - | 58,715.85 | - | - | 372.48 | - |
| 11/9/2012 | - | - | 23.93 | Late Charge Assessment | 5/25/2011 | 8,400.02 | - | - | - | 23.93 | - | 58,715.85 | - | - | 396.41 | - |
| 11/25/2012 | 480.36 | - | - | Payment Due - 11/25/2012 | 5/25/2011 | 8,880.38 | - | - | - | - | - | 58,715.85 | - | - | 396.41 | - |
| 12/10/2012 | - | - | 23.61 | Late Charge Assessment | 5/25/2011 | 8,880.38 | - | - | - | 23.61 | - | 58,715.85 | - | - | 420.02 | - |
| 12/25/2012 | 473.92 | - | - | Payment Due - 12/25/2012 | 5/25/2011 | 9,354.30 | - | - | - | - | - | 58,715.85 | - | - | 420.02 | - |
| 1/9/2013 | - | - | 24.02 | Late Charge Assessment | 5/25/2011 | 9,354.30 | - | - | - | 24.02 | - | 58,715.85 | - | - | 444.04 | - |
| 1/25/2013 | 482.16 | - | - | Payment Due - 1/25/2013 | 5/25/2011 | 9,836.46 | - | - | - | - | - | 58,715.85 | - | - | 444.04 | - |
| 2/9/2013 | - | - | 23.70 | Late Charge Assessment | 5/25/2011 | 9,836.46 | - | - | - | 23.70 | - | 58,715.85 | - | - | 467.74 | - |
| 2/25/2013 | 483.07 | - | - | Payment Due - 2/25/2013 | 5/25/2011 | 10,319.53 | - | - | - | - | - | 58,715.85 | - | - | 467.74 | - |
| 3/12/2013 | - | - | 24.11 | Late Charge Assessment | 5/25/2011 | 10,319.53 | - | - | - | 24.11 | - | 58,715.85 | - | - | 491.85 | - |

Official Form 410A    **Mortgage Proof of Claim Attachment**    page 2 of 8

**Mortgage Proof of Claim Attachment: Additional Page    Exhibit A  Second mortgage  poc 4-1    Page 6 of 40**                                                        (12/15)

| | |
|---|---|
| Case Number: | 19-16431-JKS |
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 3/25/2013 | 461.64 | - | - | Payment Due - 3/25/2013 | 5/25/2011 | 10,781.17 | - | - | - | - | - | 58,715.85 | - | - | 491.85 | - |
| 4/9/2013 | - | - | 24.15 | Late Charge Assessment | 5/25/2011 | 10,781.17 | - | - | - | 24.15 | - | 58,715.85 | - | - | 516.00 | - |
| 4/25/2013 | 484.83 | - | - | Payment Due - 4/25/2013 | 5/25/2011 | 11,266.00 | - | - | - | - | - | 58,715.85 | - | - | 516.00 | - |
| 5/10/2013 | - | - | 23.08 | Late Charge Assessment | 5/25/2011 | 11,266.00 | - | - | - | 23.08 | - | 58,715.85 | - | - | 539.08 | - |
| 5/25/2013 | 478.24 | - | - | Payment Due - 5/25/2013 | 5/25/2011 | 11,744.24 | - | - | - | - | - | 58,715.85 | - | - | 539.08 | - |
| 6/9/2013 | - | - | 24.24 | Late Charge Assessment | 5/25/2011 | 11,744.24 | - | - | - | 24.24 | - | 58,715.85 | - | - | 563.32 | - |
| 6/25/2013 | 486.64 | - | - | Payment Due - 6/25/2013 | 5/25/2011 | 12,230.88 | - | - | - | - | - | 58,715.85 | - | - | 563.32 | - |
| 7/10/2013 | - | - | 23.91 | Late Charge Assessment | 5/25/2011 | 12,230.88 | - | - | - | 23.91 | - | 58,715.85 | - | - | 587.23 | - |
| 7/25/2013 | 480.01 | - | - | Payment Due - 7/25/2013 | 5/25/2011 | 12,710.89 | - | - | - | - | - | 58,715.85 | - | - | 587.23 | - |
| 8/9/2013 | - | - | 24.33 | Late Charge Assessment | 5/25/2011 | 12,710.89 | - | - | - | 24.33 | - | 58,715.85 | - | - | 611.56 | - |
| 8/25/2013 | 488.47 | - | - | Payment Due - 8/25/2013 | 5/25/2011 | 13,199.36 | - | - | - | - | - | 58,715.85 | - | - | 611.56 | - |
| 9/9/2013 | - | - | 24.00 | Late Charge Assessment | 5/25/2011 | 13,199.36 | - | - | - | 24.00 | - | 58,715.85 | - | - | 635.56 | - |
| 9/25/2013 | 489.42 | - | - | Payment Due - 9/25/2013 | 5/25/2011 | 13,688.78 | - | - | - | - | - | 58,715.85 | - | - | 635.56 | - |
| 10/10/2013 | - | - | 24.42 | Late Charge Assessment | 5/25/2011 | 13,688.78 | - | - | - | 24.42 | - | 58,715.85 | - | - | 659.98 | - |
| 10/25/2013 | 482.70 | - | - | Payment Due - 10/25/2013 | 5/25/2011 | 14,171.48 | - | - | - | - | - | 58,715.85 | - | - | 659.98 | - |
| 11/9/2013 | - | - | 24.47 | Late Charge Assessment | 5/25/2011 | 14,171.48 | - | - | - | 24.47 | - | 58,715.85 | - | - | 684.45 | - |
| 11/25/2013 | 491.27 | - | - | Payment Due - 11/25/2013 | 5/25/2011 | 14,662.75 | - | - | - | - | - | 58,715.85 | - | - | 684.45 | - |
| 12/10/2013 | - | - | 24.14 | Late Charge Assessment | 5/25/2011 | 14,662.75 | - | - | - | 24.14 | - | 58,715.85 | - | - | 708.59 | - |
| 12/25/2013 | 484.50 | - | - | Payment Due - 12/25/2013 | 5/25/2011 | 15,147.25 | - | - | - | - | - | 58,715.85 | - | - | 708.59 | - |
| 1/9/2014 | - | - | 24.56 | Late Charge Assessment | 5/25/2011 | 15,147.25 | - | - | - | 24.56 | - | 58,715.85 | - | - | 733.15 | - |
| 1/25/2014 | 493.15 | - | - | Payment Due - 1/25/2014 | 5/25/2011 | 15,640.40 | - | - | - | - | - | 58,715.85 | - | - | 733.15 | - |
| 2/9/2014 | - | - | 24.23 | Late Charge Assessment | 5/25/2011 | 15,640.40 | - | - | - | 24.23 | - | 58,715.85 | - | - | 757.38 | - |
| 2/25/2014 | 494.09 | - | - | Payment Due - 2/25/2014 | 5/25/2011 | 16,134.49 | - | - | - | - | - | 58,715.85 | - | - | 757.38 | - |
| 3/12/2014 | - | - | 24.66 | Late Charge Assessment | 5/25/2011 | 16,134.49 | - | - | - | 24.66 | - | 58,715.85 | - | - | 782.04 | - |
| 3/25/2014 | 471.64 | - | - | Payment Due - 3/25/2014 | 5/25/2011 | 16,606.13 | - | - | - | - | - | 58,715.85 | - | - | 782.04 | - |
| 4/9/2014 | - | - | 24.70 | Late Charge Assessment | 5/25/2011 | 16,606.13 | - | - | - | 24.70 | - | 58,715.85 | - | - | 806.74 | - |

**Mortgage Proof of Claim Attachment: Additional Page**    Exhibit A  Second mortgage  poc 4-1    Page 7 of 40    **(12/15)**

| Case Number: | 19-16431-JKS |
|---|---|
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 4/25/2014 | 495.93 | - | - | Payment Due - 4/25/2014 | 5/25/2011 | 17,102.06 | - | - | - | - | - | 58,715.85 | - | - | 806.74 | - |
| 5/10/2014 | - | - | 23.58 | Late Charge Assessment | 5/25/2011 | 17,102.06 | - | - | - | 23.58 | - | 58,715.85 | - | - | 830.32 | - |
| 5/25/2014 | 489.03 | - | - | Payment Due - 5/25/2014 | 5/25/2011 | 17,591.09 | - | - | - | - | - | 58,715.85 | - | - | 830.32 | - |
| 6/9/2014 | - | - | 24.80 | Late Charge Assessment | 5/25/2011 | 17,591.09 | - | - | - | 24.80 | - | 58,715.85 | - | - | 855.12 | - |
| 6/25/2014 | 497.84 | - | - | Payment Due - 6/25/2014 | 5/25/2011 | 18,088.93 | - | - | - | - | - | 58,715.85 | - | - | 855.12 | - |
| 7/10/2014 | - | - | 24.45 | Late Charge Assessment | 5/25/2011 | 18,088.93 | - | - | - | 24.45 | - | 58,715.85 | - | - | 879.57 | - |
| 7/25/2014 | 490.89 | - | - | Payment Due - 7/25/2014 | 5/25/2011 | 18,579.82 | - | - | - | - | - | 58,715.85 | - | - | 879.57 | - |
| 8/9/2014 | - | - | 24.89 | Late Charge Assessment | 5/25/2011 | 18,579.82 | - | - | - | 24.89 | - | 58,715.85 | - | - | 904.46 | - |
| 8/25/2014 | 499.75 | - | - | Payment Due - 8/25/2014 | 5/25/2011 | 19,079.57 | - | - | - | - | - | 58,715.85 | - | - | 904.46 | - |
| 9/9/2014 | - | - | 24.54 | Late Charge Assessment | 5/25/2011 | 19,079.57 | - | - | - | 24.54 | - | 58,715.85 | - | - | 929.00 | - |
| 9/25/2014 | 500.75 | - | - | Payment Due - 9/25/2014 | 5/25/2011 | 19,580.32 | - | - | - | - | - | 58,715.85 | - | - | 929.00 | - |
| 10/10/2014 | - | - | 24.99 | Late Charge Assessment | 5/25/2011 | 19,580.32 | - | - | - | 24.99 | - | 58,715.85 | - | - | 953.99 | - |
| 10/25/2014 | 493.69 | - | - | Payment Due - 10/25/2014 | 5/25/2011 | 20,074.01 | - | - | - | - | - | 58,715.85 | - | - | 953.99 | - |
| 11/9/2014 | - | - | 25.04 | Late Charge Assessment | 5/25/2011 | 20,074.01 | - | - | - | 25.04 | - | 58,715.85 | - | - | 979.03 | - |
| 11/25/2014 | 502.69 | - | - | Payment Due - 11/25/2014 | 5/25/2011 | 20,576.70 | - | - | - | - | - | 58,715.85 | - | - | 979.03 | - |
| 12/10/2014 | - | - | 24.68 | Late Charge Assessment | 5/25/2011 | 20,576.70 | - | - | - | 24.68 | - | 58,715.85 | - | - | 1,003.71 | - |
| 12/25/2014 | 495.58 | - | - | Payment Due - 12/25/2014 | 5/25/2011 | 21,072.28 | - | - | - | - | - | 58,715.85 | - | - | 1,003.71 | - |
| 1/9/2015 | - | - | 25.13 | Late Charge Assessment | 5/25/2011 | 21,072.28 | - | - | - | 25.13 | - | 58,715.85 | - | - | 1,028.84 | - |
| 1/25/2015 | 504.64 | - | - | Payment Due - 1/25/2015 | 5/25/2011 | 21,576.92 | - | - | - | - | - | 58,715.85 | - | - | 1,028.84 | - |
| 2/9/2015 | - | - | 24.78 | Late Charge Assessment | 5/25/2011 | 21,576.92 | - | - | - | 24.78 | - | 58,715.85 | - | - | 1,053.62 | - |
| 2/25/2015 | 505.63 | - | - | Payment Due - 2/25/2015 | 5/25/2011 | 22,082.55 | - | - | - | - | - | 58,715.85 | - | - | 1,053.62 | - |
| 3/12/2015 | - | - | 25.23 | Late Charge Assessment | 5/25/2011 | 22,082.55 | - | - | - | 25.23 | - | 58,715.85 | - | - | 1,078.85 | - |
| 3/25/2015 | 482.10 | - | - | Payment Due - 3/25/2015 | 5/25/2011 | 22,564.65 | - | - | - | - | - | 58,715.85 | - | - | 1,078.85 | - |
| 4/9/2015 | - | - | 25.28 | Late Charge Assessment | 5/25/2011 | 22,564.65 | - | - | - | 25.28 | - | 58,715.85 | - | - | 1,104.13 | - |
| 4/25/2015 | 507.55 | - | - | Payment Due - 4/25/2015 | 5/25/2011 | 23,072.20 | - | - | - | - | - | 58,715.85 | - | - | 1,104.13 | - |
| 5/10/2015 | - | - | 24.11 | Late Charge Assessment | 5/25/2011 | 23,072.20 | - | - | - | 24.11 | - | 58,715.85 | - | - | 1,128.24 | - |

**Mortgage Proof of Claim Attachment: Additional Page   Exhibit A  Second mortgage_poc 4-1    Page 8 of 40** (12/15)

| Case Number: | 19-16431-JKS |
|---|---|
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 5/25/2015 | 500.32 | - | - | Payment Due - 5/25/2015 | 5/25/2011 | 23,572.52 | - | - | - | - | - | 58,715.85 | - | - | 1,128.24 | - |
| 6/9/2015 | - | - | 25.38 | Late Charge Assessment | 5/25/2011 | 23,572.52 | - | - | - | 25.38 | - | 58,715.85 | - | - | 1,153.62 | - |
| 6/25/2015 | 509.54 | - | - | Payment Due - 6/25/2015 | 5/25/2011 | 24,082.06 | - | - | - | - | - | 58,715.85 | - | - | 1,153.62 | - |
| 7/10/2015 | - | - | 25.02 | Late Charge Assessment | 5/25/2011 | 24,082.06 | - | - | - | 25.02 | - | 58,715.85 | - | - | 1,178.64 | - |
| 7/25/2015 | 502.25 | - | - | Payment Due - 7/25/2015 | 5/25/2011 | 24,584.31 | - | - | - | - | - | 58,715.85 | - | - | 1,178.64 | - |
| 8/9/2015 | - | - | 25.48 | Late Charge Assessment | 5/25/2011 | 24,584.31 | - | - | - | 25.48 | - | 58,715.85 | - | - | 1,204.12 | - |
| 8/25/2015 | 511.54 | - | - | Payment Due - 8/25/2015 | 5/25/2011 | 25,095.85 | - | - | - | - | - | 58,715.85 | - | - | 1,204.12 | - |
| 9/9/2015 | - | - | 25.11 | Late Charge Assessment | 5/25/2011 | 25,095.85 | - | - | - | 25.11 | - | 58,715.85 | - | - | 1,229.23 | - |
| 9/25/2015 | 512.58 | - | - | Payment Due - 9/25/2015 | 5/25/2011 | 25,608.43 | - | - | - | - | - | 58,715.85 | - | - | 1,229.23 | - |
| 10/10/2015 | - | - | 25.58 | Late Charge Assessment | 5/25/2011 | 25,608.43 | - | - | - | 25.58 | - | 58,715.85 | - | - | 1,254.81 | - |
| 10/25/2015 | 505.19 | - | - | Payment Due - 10/25/2015 | 5/25/2011 | 26,113.62 | - | - | - | - | - | 58,715.85 | - | - | 1,254.81 | - |
| 11/9/2015 | - | - | 25.63 | Late Charge Assessment | 5/25/2011 | 26,113.62 | - | - | - | 25.63 | - | 58,715.85 | - | - | 1,280.44 | - |
| 11/25/2015 | 514.61 | - | - | Payment Due - 11/25/2015 | 5/25/2011 | 26,628.23 | - | - | - | - | - | 58,715.85 | - | - | 1,280.44 | - |
| 12/10/2015 | - | - | 25.26 | Late Charge Assessment | 5/25/2011 | 26,628.23 | - | - | - | 25.26 | - | 58,715.85 | - | - | 1,305.70 | - |
| 12/25/2015 | 507.17 | - | - | Payment Due - 12/25/2015 | 5/25/2011 | 27,135.40 | - | - | - | - | - | 58,715.85 | - | - | 1,305.70 | - |
| 1/9/2016 | - | - | 25.73 | Late Charge Assessment | 5/25/2011 | 27,135.40 | - | - | - | 25.73 | - | 58,715.85 | - | - | 1,331.43 | - |
| 1/25/2016 | 516.65 | - | - | Payment Due - 1/25/2016 | 5/25/2011 | 27,652.05 | - | - | - | - | - | 58,715.85 | - | - | 1,331.43 | - |
| 2/9/2016 | - | - | 25.36 | Late Charge Assessment | 5/25/2011 | 27,652.05 | - | - | - | 25.36 | - | 58,715.85 | - | - | 1,356.79 | - |
| 2/25/2016 | 533.26 | - | - | Payment Due - 2/25/2016 | 5/25/2011 | 28,185.31 | - | - | - | - | - | 58,715.85 | - | - | 1,356.79 | - |
| 3/11/2016 | - | - | 25.83 | Late Charge Assessment | 5/25/2011 | 28,185.31 | - | - | - | 25.83 | - | 58,715.85 | - | - | 1,382.62 | - |
| 3/25/2016 | 516.27 | - | - | Payment Due - 3/25/2016 | 5/25/2011 | 28,701.58 | - | - | - | - | - | 58,715.85 | - | - | 1,382.62 | - |
| 4/9/2016 | - | - | 26.66 | Late Charge Assessment | 5/25/2011 | 28,701.58 | - | - | - | 26.66 | - | 58,715.85 | - | - | 1,409.28 | - |
| 4/25/2016 | 535.53 | - | - | Payment Due - 4/25/2016 | 5/25/2011 | 29,237.11 | - | - | - | - | - | 58,715.85 | - | - | 1,409.28 | - |
| 5/10/2016 | - | - | 25.81 | Late Charge Assessment | 5/25/2011 | 29,237.11 | - | - | - | 25.81 | - | 58,715.85 | - | - | 1,435.09 | - |
| 5/25/2016 | 527.58 | - | - | Payment Due - 5/25/2016 | 5/25/2011 | 29,764.69 | - | - | - | - | - | 58,715.85 | - | - | 1,435.09 | - |
| 6/9/2016 | - | - | 26.78 | Late Charge Assessment | 5/25/2011 | 29,764.69 | - | - | - | 26.78 | - | 58,715.85 | - | - | 1,461.87 | - |

**Mortgage Proof of Claim Attachment: Additional Page**    Exhibit A  Second mortgage  poc 4-1    Page 9 of 40    **(12/15)**

| Case Number: | 19-16431-JKS |
| --- | --- |
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | B. | C. | D. | E. | F. | G | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 6/25/2016 | 537.87 | - | - | Payment Due - 6/25/2016 | 5/25/2011 | 30,302.56 | - | - | - | - | - | 58,715.85 | - | - | 1,461.87 | - |
| 7/10/2016 | - | - | 26.38 | Late Charge Assessment | 5/25/2011 | 30,302.56 | - | - | - | 26.38 | - | 58,715.85 | - | - | 1,488.25 | - |
| 7/25/2016 | 529.84 | - | - | Payment Due - 7/25/2016 | 5/25/2011 | 30,832.40 | - | - | - | - | - | 58,715.85 | - | - | 1,488.25 | - |
| 8/9/2016 | - | - | 26.89 | Late Charge Assessment | 5/25/2011 | 30,832.40 | - | - | - | 26.89 | - | 58,715.85 | - | - | 1,515.14 | - |
| 8/25/2016 | 540.21 | - | - | Payment Due - 8/25/2016 | 5/25/2011 | 31,372.61 | - | - | - | - | - | 58,715.85 | - | - | 1,515.14 | - |
| 9/9/2016 | - | - | 26.49 | Late Charge Assessment | 5/25/2011 | 31,372.61 | - | - | - | 26.49 | - | 58,715.85 | - | - | 1,541.63 | - |
| 9/25/2016 | 541.42 | - | - | Payment Due - 9/25/2016 | 5/25/2011 | 31,914.03 | - | - | - | - | - | 58,715.85 | - | - | 1,541.63 | - |
| 10/10/2016 | - | - | 27.01 | Late Charge Assessment | 5/25/2011 | 31,914.03 | - | - | - | 27.01 | - | 58,715.85 | - | - | 1,568.64 | - |
| 10/25/2016 | 533.28 | - | - | Payment Due - 10/25/2016 | 5/25/2011 | 32,447.31 | - | - | - | - | - | 58,715.85 | - | - | 1,568.64 | - |
| 11/9/2016 | - | - | 27.07 | Late Charge Assessment | 5/25/2011 | 32,447.31 | - | - | - | 27.07 | - | 58,715.85 | - | - | 1,595.71 | - |
| 11/25/2016 | 543.80 | - | - | Payment Due - 11/25/2016 | 5/25/2011 | 32,991.11 | - | - | - | - | - | 58,715.85 | - | - | 1,595.71 | - |
| 12/10/2016 | - | - | 26.66 | Late Charge Assessment | 5/25/2011 | 32,991.11 | - | - | - | 26.66 | - | 58,715.85 | - | - | 1,622.37 | - |
| 12/25/2016 | 535.58 | - | - | Payment Due - 12/25/2016 | 5/25/2011 | 33,526.69 | - | - | - | - | - | 58,715.85 | - | - | 1,622.37 | - |
| 1/9/2017 | - | - | 27.19 | Late Charge Assessment | 5/25/2011 | 33,526.69 | - | - | - | 27.19 | - | 58,715.85 | - | - | 1,649.56 | - |
| 1/25/2017 | 546.20 | - | - | Payment Due - 1/25/2017 | 5/25/2011 | 34,072.89 | - | - | - | - | - | 58,715.85 | - | - | 1,649.56 | - |
| 2/9/2017 | - | - | 26.78 | Late Charge Assessment | 5/25/2011 | 34,072.89 | - | - | - | 26.78 | - | 58,715.85 | - | - | 1,676.34 | - |
| 2/25/2017 | 547.41 | - | - | Payment Due - 2/25/2017 | 5/25/2011 | 34,620.30 | - | - | - | - | - | 58,715.85 | - | - | 1,676.34 | - |
| 3/12/2017 | - | - | 27.31 | Late Charge Assessment | 5/25/2011 | 34,620.30 | - | - | - | 27.31 | - | 58,715.85 | - | - | 1,703.65 | - |
| 3/25/2017 | 534.87 | - | - | Payment Due - 3/25/2017 | 5/25/2011 | 35,155.17 | - | - | - | - | - | 58,715.85 | - | - | 1,703.65 | - |
| 4/9/2017 | - | - | 27.37 | Late Charge Assessment | 5/25/2011 | 35,155.17 | - | - | - | 27.37 | - | 58,715.85 | - | - | 1,731.02 | - |
| 4/25/2017 | 566.31 | - | - | Payment Due - 4/25/2017 | 5/25/2011 | 35,721.48 | - | - | - | - | - | 58,715.85 | - | - | 1,731.02 | - |
| 5/10/2017 | - | - | 26.74 | Late Charge Assessment | 5/25/2011 | 35,721.48 | - | - | - | 26.74 | - | 58,715.85 | - | - | 1,757.76 | - |
| 5/25/2017 | 557.54 | - | - | Payment Due - 5/25/2017 | 5/25/2011 | 36,279.02 | - | - | - | - | - | 58,715.85 | - | - | 1,757.76 | - |
| 6/1/2017 | - | - | - | Loan Boarded with FCI Lender Services, Inc. | 5/25/2011 | 36,279.02 | - | - | - | - | - | 58,715.85 | - | - | 1,757.76 | - |
| 6/1/2017 | - | - | 330.00 | Prior Servicer Corporate Advance | 5/25/2011 | 36,279.02 | - | - | - | 330.00 | - | 58,715.85 | - | - | 2,087.76 | - |
| 6/9/2017 | - | - | 28.32 | Late Charge Assessment | 5/25/2011 | 36,279.02 | - | - | - | 28.32 | - | 58,715.85 | - | - | 2,116.08 | - |

**Mortgage Proof of Claim Attachment: Additional Page  Exhibit A  Second mortgage  poc 4-1    Page 10 of 40**                                                                 **(12/15)**

| Case Number: | 19-16431-JKS |
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 6/25/2017 | 586.54 | - | - | Payment Due - 6/25/2017 | 5/25/2011 | 36,865.56 | - | - | - | - | - | 58,715.85 | - | - | 2,116.08 | - |
| 7/10/2017 | - | - | 27.88 | Late Charge Assessment | 5/25/2011 | 36,865.56 | - | - | - | 27.88 | - | 58,715.85 | - | - | 2,143.96 | - |
| 7/25/2017 | 577.80 | - | - | Payment Due - 7/25/2017 | 5/25/2011 | 37,443.36 | - | - | - | - | - | 58,715.85 | - | - | 2,143.96 | - |
| 8/9/2017 | - | - | 45.83 | Late Charge Assessment | 5/25/2011 | 37,443.36 | - | - | - | 45.83 | - | 58,715.85 | - | - | 2,189.79 | - |
| 8/25/2017 | 607.02 | - | - | Payment Due - 8/25/2017 | 5/25/2011 | 38,050.38 | - | - | - | - | - | 58,715.85 | - | - | 2,189.79 | - |
| 9/9/2017 | - | - | 28.89 | Late Charge Assessment | 5/25/2011 | 38,050.38 | - | - | - | 28.89 | - | 58,715.85 | - | - | 2,218.68 | - |
| 9/25/2017 | 608.73 | - | - | Payment Due - 9/25/2017 | 5/25/2011 | 38,659.11 | - | - | - | - | - | 58,715.85 | - | - | 2,218.68 | - |
| 10/10/2017 | - | - | 30.35 | Late Charge Assessment | 5/25/2011 | 38,659.11 | - | - | - | 30.35 | - | 58,715.85 | - | - | 2,249.03 | - |
| 10/25/2017 | 598.92 | - | - | Payment Due - 10/25/2017 | 5/25/2011 | 39,258.03 | - | - | - | - | - | 58,715.85 | - | - | 2,249.03 | - |
| 11/9/2017 | - | - | 30.44 | Late Charge Assessment | 5/25/2011 | 39,258.03 | - | - | - | 30.44 | - | 58,715.85 | - | - | 2,279.47 | - |
| 11/25/2017 | 612.13 | - | - | Payment Due - 11/25/2017 | 5/25/2011 | 39,870.16 | - | - | - | - | - | 58,715.85 | - | - | 2,279.47 | - |
| 12/10/2017 | - | - | 29.95 | Late Charge Assessment | 5/25/2011 | 39,870.16 | - | - | - | 29.95 | - | 58,715.85 | - | - | 2,309.42 | - |
| 12/25/2017 | 602.22 | - | - | Payment Due - 12/25/2017 | 5/25/2011 | 40,472.38 | - | - | - | - | - | 58,715.85 | - | - | 2,309.42 | - |
| 1/9/2018 | - | - | 30.61 | Late Charge Assessment | 5/25/2011 | 40,472.38 | - | - | - | 30.61 | - | 58,715.85 | - | - | 2,340.03 | - |
| 1/25/2018 | 615.56 | - | - | Payment Due - 1/25/2018 | 5/25/2011 | 41,087.94 | - | - | - | - | - | 58,715.85 | - | - | 2,340.03 | - |
| 2/9/2018 | - | - | 30.11 | Late Charge Assessment | 5/25/2011 | 41,087.94 | - | - | - | 30.11 | - | 58,715.85 | - | - | 2,370.14 | - |
| 2/25/2018 | 634.63 | - | - | Payment Due - 2/25/2018 | 5/25/2011 | 41,722.57 | - | - | - | - | - | 58,715.85 | - | - | 2,370.14 | - |
| 3/12/2018 | - | - | 30.78 | Late Charge Assessment | 5/25/2011 | 41,722.57 | - | - | - | 30.78 | - | 58,715.85 | - | - | 2,400.92 | - |
| 3/25/2018 | 599.46 | - | - | Payment Due - 3/25/2018 | 5/25/2011 | 42,322.03 | - | - | - | - | - | 58,715.85 | - | - | 2,400.92 | - |
| 4/9/2018 | - | - | 31.73 | Late Charge Assessment | 5/25/2011 | 42,322.03 | - | - | - | 31.73 | - | 58,715.85 | - | - | 2,432.65 | - |
| 4/25/2018 | 638.34 | - | - | Payment Due - 4/25/2018 | 5/25/2011 | 42,960.37 | - | - | - | - | - | 58,715.85 | - | - | 2,432.65 | - |
| 5/10/2018 | - | - | 29.97 | Late Charge Assessment | 5/25/2011 | 42,960.37 | - | - | - | 29.97 | - | 58,715.85 | - | - | 2,462.62 | - |
| 5/25/2018 | 627.75 | - | - | Payment Due - 5/25/2018 | 5/25/2011 | 43,588.12 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 6/25/2018 | 659.66 | - | - | Payment Due - 6/25/2018 | 5/25/2011 | 44,247.78 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 7/25/2018 | 648.47 | - | - | Payment Due - 7/25/2018 | 5/25/2011 | 44,896.25 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 8/25/2018 | 681.42 | - | - | Payment Due - 8/25/2018 | 5/25/2011 | 45,577.67 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |

**Mortgage Proof of Claim Attachment: Additional Page**  Exhibit A  Second mortgage  poc 4-1    Page 11 of 40                    (12/15)

| Case Number: | 19-16431-JKS |
|---|---|
| Debtor 1: | Hugo M Pando |

## Part 5:  Loan Payment History from First Date of Default

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** | **B.** | **C.** | **D.** | **E.** | **F.** | **G** | **H.** | **I.** | **J.** | **K.** | **L.** | **M.** | **N.** | **O.** | **P.** | **Q.** |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 9/25/2018 | 683.61 | - | - | Payment Due - 9/25/2018 | 5/25/2011 | 46,261.28 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 10/25/2018 | 671.84 | - | - | Payment Due - 10/25/2018 | 5/25/2011 | 46,933.12 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 11/25/2018 | 687.94 | - | - | Payment Due - 11/25/2018 | 5/25/2011 | 47,621.06 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 12/25/2018 | 693.67 | - | - | Payment Due - 12/25/2018 | 5/25/2011 | 48,314.73 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 1/25/2019 | 710.71 | - | - | Payment Due - 1/25/2019 | 5/25/2011 | 49,025.44 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 2/25/2019 | 731.53 | - | - | Payment Due - 2/25/2019 | 5/25/2011 | 49,756.97 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |
| 3/25/2019 | 687.62 | - | - | Payment Due - 3/25/2019 | 5/25/2011 | 50,444.59 | - | - | - | - | - | 58,715.85 | - | - | 2,462.62 | - |

**Official Form 410A**                    **Mortgage Proof of Claim Attachment**                    page 8 of 8

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

In Re:                                  Case No. 19-16431-JKS

Hugo M Pando
Amandi D Pando                          Chapter 13

Debtors.                                Judge John K. Sherwood

---

## ADDENDUM TO MORTGAGE PROOF OF CLAIM

Description of Security for Debt:  132 Hornblower Ave, Belleville, NJ 07109-2555

Respectfully Submitted

/s/ D. Anthony Sottile

D. Anthony Sottile
Authorized Agent for Creditor
Sottile & Barile, LLC
394 Wards Corner Road, Suite 180
Loveland, OH 45140
Phone: 513.444.4100
Email: bankruptcy@sottileandbarile.com

## **CERTIFICATE OF SERVICE**

I certify that on April 12, 2019, a copy of the foregoing Proof of Claim was filed electronically.
Notice of this filing will be sent to the following party/parties through the Court's ECF System.
Party/Parties may access this filing through the Court's system:

       Carlos D Martinez, Debtors' Counsel
       cmartinez@scura.com

       Marie-Ann Greenberg, Chapter 13 Trustee
       magecf@magtrustee.com

       Office of the United States Trustee
       ustpregion03.ne.ecf@usdoj.gov

I further certify that on April 12, 2019, a copy of the foregoing Proof of Claim was mailed by
first-class U.S. Mail, postage prepaid and properly addressed to the following:

       Hugo M Pando, Debtor
       132 Hornblower Ave
       Belleville, NJ 07109

       Amandi D Pando, Debtor
       132 Hornblower Ave
       Belleville, NJ 07109

Dated: April 12, 2019                    /s/ D. Anthony Sottile
                                        D. Anthony Sottile
                                        Authorized Agent for Creditor
                                        Sottile & Barile, LLC
                                        394 Wards Corner Road, Suite 180
                                        Loveland, OH 45140
                                        Phone: 513.444.4100
                                        Email: bankruptcy@sottileandbarile.com

Prepared by: BENITA KNABLE

**COUNTRYWIDE HOME LOANS, INC.**

DATE:          10/04/2005
BORROWER: HUGO M. PANDO
CASE #:
LOAN #:
PROPERTY ADDRESS: 132 HORNBLOWER AVE
                 BELLEVILLE, NJ 07109-2555

Branch i
11 COMMERCE DRIVE
CRANFORD, NJ 07016-3501
Phone: (908)709-2500
Br Fax No.: (908)653-0751

# SECONDARY MORTGAGE LOAN
### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

Date: 10/06/2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

# CERTIFIED TRUE COPY

● HELOC - NJ Agreement and Disclosure Secondary Statement
2C514-NJ (05/05)(d)                            Page 1 of 11



LOAN #  ████████

**A.** Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

**B.** Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

**C.** Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

**D.** Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

**E.** Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

**F.** Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

LOAN #: ▮▮▮▮▮

**G.** <u>Limitation of Liability.</u> Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

**H.** <u>Termination/Suspension of Account.</u> Upon·any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

**I.** <u>Cancellation/Expiration of Cards.</u> I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

**J.** <u>Lost or Stolen Cards.</u> **I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use.** You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

**K.** <u>Unauthorized Transactions.</u> I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

**L.** <u>Special Rule for Card Purchases.</u> The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:
    **Special Rule for Card Purchases.**
    If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

    (a)  I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

    (b)  The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

**4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

**A.** I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges incurred in connection with this Agreement I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

**B.** At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance or more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

**C.** I may pay all or any part of my "New Balance" at any time, without penalty.

**D.** I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a Check to pay all or any part of my New Balance, I understand that:

    (1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

    (2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

    (3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

LOAN #: ▉▉▉▉▉▉

(4) I may not use a Check to make a payment once the Draw Period ends; that is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 58,000.00          . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is     N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be     N/A % and the initial **ANNUAL PERCENTAGE RATE** would be     N/A %. These discounted rates will be in effect from the date of this Agreement until N/A                    . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is 0.02671 % and the initial **ANNUAL PERCENTAGE RATE** is 9.750 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365 (or 366 in a leap year).

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is    3.500 percentage points.                           .

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never increase above    18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGES.**

I agree to pay finance charges on my Account as explained below.

A. Periodic FINANCE CHARGE.

LOAN #: ████████

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other FINANCE CHARGES.

(1) Points FINANCE CHARGE.

I agree to pay a Points FINANCE CHARGE of $ 0.00                         at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(2) Broker Fee FINANCE CHARGES.

I agree to pay Broker Fee FINANCE CHARGES of $                         N/A at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(3) Settlement Agent FINANCE CHARGES.

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

Attorney's Fees                                          $           250.00
                                                         $ _____
                                                         $ _____
                                                         $ _____
                                                         $ _____
                                                         $ _____

(4) Miscellaneous FINANCE CHARGES.

I agree to pay the following Miscellaneous FINANCE CHARGES at the time I sign this Agreement:

$ _____
$ _____
$ _____
$ _____

(5) Annual Maintenance Fee FINANCE CHARGE.

☐ I agree to pay an annual maintenance fee FINANCE CHARGE of $ 0.00                         which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall bellow $                         from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☒ I will not be charged an annual maintenance fee FINANCE CHARGE on this loan.

LOAN #: ▬▬▬

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Recording | $ 250.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 500.00 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. I will not be charged an Account Termination Fee on this loan.

**9. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at
132 HORNBLOWER AVE, BELLEVILLE, NJ 07109-2555
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise; however, the amount of such required insurance shall not exceed the amount of the loan together with the amount needed to satisfy all prior liens on the property, and in no event shall the required amount of fire insurance exceed the replacement cost of the Property. I may obtain property insurance from any company of my choice that is acceptable to you, which acceptance shall not be unreasonable withheld. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

NOTICE TO BORROWER

YOU MAY BE REQUIRED TO PURCHASE PROPERTY INSURANCE AS A CONDITION OF RECEIVING THE LOAN.
IF PROPERTY INSURANCE IS REQUIRED, YOU MAY SECURE INSURANCE FROM A COMPANY OR AGENT OF YOUR OWN CHOOSING.

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2)    you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3)    I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4)    government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)    government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6)    the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7)    the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supercede your rights described in this paragraph 11.

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1)    I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)    I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3)    I sell or transfer title to the Real Property without first obtaining your written permission;

(4)    I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5)    I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6)    I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)    All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)    A prior lienholder on the Real Property begins foreclosure under its security document;

(9)    The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

LOAN #: █████████

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a)   A judgment is filed against me;

    (b)   I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c)   I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d)   I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

    (1)   you may terminate any of my rights under my Account;

    (2)   you may temporarily or permanently refuse to make any additional loans;

    (3)   you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

    (4)   you may foreclose the Mortgage;

    (5)   you may reduce my Credit Limit; and

    (6)   you may take any other action permitted by this Agreement, by law or in equity.

## 13. MY IMPORTANT OBLIGATIONS. I agree that:

A. I will pay all of my existing and future debts to you under this Agreement and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

    (1)  my promise not to exceed my Credit Limit; and

    (2)  my "Important Obligations" listed in the Mortgage.

J. Before you renew a Draw Period or increase my Credit Limit on my Account, I may need to execute additional documents in order to secure the payment of any loans advanced during any renewed Draw Period or under increased Credit Limit.

## 14. COSTS OF COLLECTION. Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

LOAN # : ████████

## 15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination.

## 16. CHANGES TO AGREEMENT.

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) if the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 17. OTHER PROVISIONS.

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law.
I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located without regard to such state's choice of law principles. Furthermore, this open-end loan is made pursuant to NJ Stat. Sec. 17:11C-1 et seq.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. <u>Complete Understanding of the Parties</u>. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

H. <u>Meaning of Words</u>. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

I. <u>Payment Marked "Payment in Full."</u> I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

J. <u>Enforcement</u>. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

K. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.K and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 17.K.

L. <u>Riders/Addenda</u>. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

| | | | |
|---|---|---|---|
| ☐ No Cost Addendum | | ☐ _____ Rider | |
| ☐ _____ Addendum | | ☐ _____ | |
| ☒ Billing Rights Statement | | | |

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

LOAN #: ███████

### NOTICE TO BORROWER

**READ THIS PROMISSORY NOTE OR LOAN AGREEMENT BEFORE YOU SIGN.**

**DO NOT SIGN THIS PROMISSORY NOTE OR LOAN AGREEMENT IF IT CONTAINS BLANK SPACES.**

**THIS PROMISSORY NOTE OR LOAN AGREEMENT IS SECURED BY A SECONDARY MORTGAGE ON YOUR REAL PROPERTY.**

_[signature]_    10-6-05

Borrower: HUGO M. PANDO                                    Date

_[signature]_ Amanda Pando    10-6-05

Borrower: AMANDI D. PANDO                                  Date

Borrower:                                                   Date

Borrower:                                                   Date

\* The Bank of New York Mellon.
as trustee for CWHEQ Revolving
Home Equity Loan Trust 2005-I,
Revolving Home Equity Loan Asset
Backed Notes, Series 2005-I

PAY TO THE ORDER OF
\*
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _[signature]_
David A. Spector
Managing Director

● HELOC - NJ Agreement and Disclosure Secondary Statement
2C514-NJ (05/05)                      Page 11 of 11

## ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FUTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.**

**Account Number:** ████████

**Note Date:** 10/06/2005

**Amount:** $58,000.00

**Customer Name:** Hugo M. Pando and Amandi D. Pando

**Property Address:** 132 Hornblower Ave., Belleville, NJ 07109-2555

✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱
**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE**
The Bank of New York Mellon, as trustee for CWHEQ Revolving Home Equity
Loan Trust 2005-I, Revolving Home Equity Loan Asset Backed Notes, Series 2005-I,
by its Attorney-in-Fact Green Tree Servicing LLC

BY: _Teresa G Harris_

Name:   Teresa G Harris
Title:   Assistant Vice President

# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:**

**Loan Date:** _10/6/2005_    **Original Loan Amount:** $ _58,000.00_

**Originator:  COUNTRYWIDE HOME LOANS, INC.**
**Original Mortgagor:  HUGO M. PANDO AND AMANDI D. PANDO**
**Property Address: 132 HORNBLOWER AVE, BELLEVILLE, NJ 07109**

Pay to The Order of
PARTNERS FOR PAYMENT RELIEF DEIV, LLC
Without Recourse

2005 RESIDENTIAL TRUST 3-2 BY WILMINGTON
SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA
TRUST AS TRUSTEE

By: _____

Janell L. Junkin, Vice President



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Instr# **5151614**          Carole A. Graves
Recorded/Filed  LJ    2    Essex County Register
10/13/2005  09:56:3  Bk 10796 Pg 607 #Pgs 5    F

e For Recording Data]

[Doc ID #]

## MORTGAGE
(Line of Credit)
MIN

THIS MORTGAGE, dated OCTOBER 6, 2005          , is between
HUGO M PANDO, AND AMANDI D PANDO, HUSBAND AND WIFE

residing at
109 WILLIAMS STREET APT-2, BELLEVILLE, NJ 07109
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us"
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation,
with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns. **MERS is the "Mortgagee" under this Mortgage.**

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the
successors and assigns of MERS,  the premises located at:
132 HORNBLOWER AVE, BELLEVILLE
Street, Municipality
ESSEX                         New Jersey 07109-2555  (the "Premises").
County                              ZIP
and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

The Premises includes all buildings and other improvements now or in the future on the Premises and all
rights and interests which derive from our ownership, use or possession of the Premises and all
appurtenances thereto.

● MERS HELOC - NJ MORTGAGE
2E017-NJ (11/04)(d)                    Page 1 of 5                    Initials:  *H.P.*
                                                                              *A.P.*



DOC ID #: ████████████

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 58,000.00          or so much thereof as may be advanced and readvanced from time to time to
HUGO M. PANDO
AMANDI D. PANDO

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated OCTOBER 6, 2005      , plus accrued interest, payment for taxes and insurance, and other payments made by Mortgagee pursuant to the terms of this Mortgage and the Note, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a)   TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b)   MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c)   INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify; however, the amount of such required insurance shall not exceed the amount of the loan together with the amount needed, to satisfy all prior liens on the Property, and in no event shall the required amount of fire insurance exceed the replacement cost of the Property. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d)   CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e)   SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

● MERS HELOC - NJ MORTGAGE
2E017-NJ (11/04)

Page 2 of 5

Initials: *H.P.*
*A.P.*

DOC ID #:

(f)  OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g)  PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated 09/01/2005          and given by us to COUNTRYWIDE HOME LOANS
as mortgagee, in the original amount of $ 232,000.00          (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i)  SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j)  INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect, to the maximum extent permitted by applicable law, all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

● MERS HELOC - NJ MORTGAGE
2E017-NJ (11/04)                                      Page 3 of 5

Initials: *H. P.*
*A. P.*

DOC ID #: [REDACTED]

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_____(SEAL)
Mortgagor: HUGO M. PANDO

_____(SEAL)
Mortgagor: AMANDI D. PANDO

_____(SEAL)
Mortgagor:

_____(SEAL)
Mortgagor:

DOC ID #: ██████████

STATE OF NEW JERSEY                    )
                                       )  ss:
COUNTY OF    **UNION**                 )

I CERTIFY that on this **6th** day of **October, 2005** ,
**HUGO M. PANDO AND AMANDI D. PANDO**
personally came before me and acknowledged under oath, to my satisfaction, that this person [or if more than one, "each person"]:

(a)        is named in and personally signed the foregoing instrument; and

(b)        signed, sealed and delivered the foregoing instrument as his or her own act and deed.

_____
[Print, type or stamp Notary Public's name and title below signature]


STATE OF NEW JERSEY                    )
                                       )  ss:
COUNTY OF                              )

I CERTIFY that on this _____ day of _____ , _____ ,

personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)        he or she is the _____ of
           _____ , the corporation named in
           the foregoing instrument; and

(b)        he or she is the maker of the foregoing instrument who, as such officer, was authorized to
           execute the instrument on behalf of the corporation and that he or she executed the
           instrument as the voluntary act and deed of the corporation by virtue of authority from its
           Board of Directors.

_____
[Print, type or stamp Notary Public's name and title below signature]


STATE OF NEW JERSEY                    )
                                       )  ss:
COUNTY OF                              )

I CERTIFY that on this _____ day of _____ , _____ ,

personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a)        he or she is the _____ of
           _____ , the partnership named in
           the foregoing instrument; and

(b)        signed, sealed and delivered the instrument as his or her own act and deed.

_____
[Print, type or stamp Notary Public's name and title below signature]


● MERS HELOC -NJ MORTGAGE
2E017-NJ (11/04)                    Page 5 of 5

Prepared by: BENITA KNABLE

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: ▓▓▓▓
11 COMMERCE DRIVE
CRANFORD, NJ 07016-3501
Phone: (908) 709-2500
Br Fax No.: (908) 653-0751

DATE:        10/06/2005
CASE #:
DOC ID #: ▓▓▓▓▓▓▓▓▓▓▓▓
BORROWER: HUGO M. PANDO
PROPERTY ADDRESS: 132 HORNBLOWER AVE
                  BELLEVILLE, NJ 07109-2555

LEGAL DESCRIPTION EXHIBIT A

## STEWART TITLE AND GUARANTY COMPANY

### TITLE INSURANCE COMMITMENT
### SCHEDULE B SECTION I
#### File Number: H-84418
#### SCHEDULE A
#### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Belleville, County of Essex State of New Jersey:

Beginning at a point on the easterly line of Hornblower Avenue one hundred and sixty feet and sixty-four hundredths of a foot southerly from the southerly line of Holmes Street; thence along said side of Hornblower Avenue South twenty degrees twenty-seven minutes West twenty-five feet; thence South sixty-nine degrees thirty-three minutes East ninety-three feet and twenty-three hundredths of a foot; thence North eighteen degrees fifty-nine minutes East twenty-five feet; thence North sixty-nine degrees thirty-three minutes West ninety-two feet and fifty-nine hundredths of a foot to the point and place of beginning.

The above description is in accordance with a survey prepared by Paul J, Rinaldi, Land Surveyor dated September 27, 2005.

NOTE: Being Lot 10, Block 7703, Tax Map of the Township of Belleville, County of Essex.

NOTE: Lot and Block shown for informational purposes only.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)






## Essex County Register Document Summary Sheet

| Transaction Identification Number | | 3061231 | 2454403 |
|---|---|---|---|

ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES

HALL OF RECORDS - ROOM 130

465 DR. MARTIN LUTHER KING BLVD

NEWARK NJ 07102

**Recorded Document to be Returned by Submitter to:**

B OF A, N.A.

4909 SAVARESE CIRCLE

TAMPA, FL 33634

**Official Use Only**

DANA RONE
REG. OF DEEDS & MORTGAGES
ESSEX COUNTY
New Jersey

DOCUMENT TYPE
3
INSTRUMENT NUMBER
2017056360
RECORDED ON
Jun 28, 2017
4:41:51 PM
Total Pages: 3

NJ PRESERVATION ACCOUNT $10.00
REGISTER RECORDING FEE $30.00
EFILING CONVENIENCE FEES $3.00
TOTAL PAID        $43.00
INV: 139935 USER: MC

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 06/26/2017 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $3.00 included)* | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |
| **Document Type** | MTGE ASSGN |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |
| **Municipal Codes** BELLEVILLE | 01 |

**Bar Code(s)**

200248

Not Certified Copy

**Additional Information (Official Use Only)**

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Essex County Register Document Summary Sheet

| MTGE ASSGN | Type | MTGE ASSGN | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | B OF A, N.A. (CSC/INGEO SYSTEMS INC) | | | | |
| | Document Date | 06/26/2017 | | | | |
| | Reference Info | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | | **Recorded/File Date** |
| | OR | 10796 | 607 | 5151614 | | |
| | MORTGAGOR | **Name** | | | **Address** | |
| | | MORTGAGE ELECTRONIC REGISTRATION | | | | |
| | ASSIGNEE | **Name** | | | **Address** | |
| | | 2005 RESIDENTIAL TRUST 3-2 | | | | |
| | Parcel Info | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | | |

Not Certified Copy

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF  ESSEX COUNTY REGISTER FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

Recording requested by:

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS

When recorded mail to:
BANK OF AMERICA, N.A.
4500 AMON CARTER BLVD.
TX2-979-01-19
FORTH WORTH, TX 76155
Attn: DOC PROCESSING FORTH
WORTH

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment#

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, P.O.BOX
2026, FLINT, MI 48501-2026, hereby assigns and transfers to 2005 Residential
Trust 3-2 425 Divisadero St Ste #207, San Francisco CA 94117 all its rights,
title and interest in and to a certain Mortgage dated 10/06/05, executed by:
HUGO M PANDO and AMANDI D PANDO, HUSBAND AND WIFE, Mortgagor as per MORTGAGE
recorded as Instrument No. 5151614 on 10/13/05 in Book 10796 Page 897 of
official records in the County Recorder's Office of ESSEX County, NEW JERSEY.
    Tax Parcel =   LOT 10:BLOCK 7703,TOWNSHIP OF BELLEVILLE
Original Mortgage $58,000.00
132 HORNBLOWER AVE, BELLEVILLE, NJ 07109

Dated: 06/22/2017    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                     NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
                     SUCCESSORS AND ASSIGNS

                     By
                        LORI DAVIS-CROSS, ASSISTANT VICE PRESIDENT .

State of Florida
County of Hillsborough

The foregoing instrument was acknowledged before me this 22 day of Jun, 2017
by LORI DAVIS-CROSS as ASSISTANT VICE PRESIDENT . for MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS
SUCCESSORS AND ASSIGNS.

(Signature of Notary Public-State of Florida)
Ethel M. Meador

, Notary Public

Personally Known  ✓   OR  N/A  Type of Identification Produced:   N/A
Produced Identification N/A

Prepared by: LY DOYSCHER
4909 SAVARESE CIR
TAMPA, FL  33634
Phone#: (800) 432-1000
MIN: 100015700059236055
MERS Phone: 1-888-679-6377



ETHEL M. MEADOR
Notary Public, State of Florida
Commission# FF 994948
My comm. expires May 22, 2020

Not a Certified Copy



## Essex County Register Document Summary Sheet

| | | | |
|---|---|---|---|
| | **Transaction Identification Number** | 3314187 | 2773627 |

ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES

**Recorded Document to be Returned by Submitter to:**

PARTNERS FOR PAYMENT RELIEF LLC

HALL OF RECORDS - ROOM 130

920 CASSATT ROAD, SUITE 210

465 DR. MARTIN LUTHER KING BLVD

BERWYN, PA 19312

NEWARK NJ 07102

| **Official Use Only** | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 02/28/2018 |
| | **No. of Pages** *(excluding Summary Sheet)* | 1 |
| | **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $3.00 included)* | $43.00 |
| | **Realty Transfer Tax** | $0.00 |
| | **Total Amount** | $43.00 |

```
        DANA RONE
  REG. OF DEEDS & MORTGAGES
       ESSEX COUNTY
        New Jersey

      DOCUMENT TYPE
            3
     INSTRUMENT NUMBER
       2018019713
       RECORDED ON
      Mar 06, 2018
       8:34:15 AM
      Total Pages: 3

NJ PRESERVATION ACCOUNT $10.00
REGISTER RECORDING FEE  $30.00
EFILING CONVENIENCE FEES $3.00
TOTAL PAID            $43.00
INV: 191630 USER: KWG
```

| **Document Type** | MTGE ASSGN |
|---|---|

**Electronic Recordation Level**   L2 - Level 2 (With Images)

**Municipal Codes**

BELLEVILLE                          01

**Bar Code(s)**

232365

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Essex County Register Document Summary Sheet

| | Type | MTGE ASSGN | | | |
|---|---|---|---|---|---|
| | **Consideration** | | | | |
| | **Submitted By** | PARTNERS FOR PAYMENT RELIEF LLC (CSC/INGEO SYSTEMS INC) | | | |
| | **Document Date** | 02/27/2018 | | | |
| | **Reference Info** | | | | |

| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
|---|---|---|---|---|---|
| **MTGE ASSGN** | OR | 10796 | 607 | | |

| | MORTGAGOR | **Name** | | **Address** | |
|---|---|---|---|---|---|
| | | 2005 RESIDENTIAL TRUST 3-2 | | | |
| | | WILMINGTON SAVINGS FUND SOCIETY FSB | | | |
| | | CHRISTIANA TRUST | | | |

| | ASSIGNEE | **Name** | | **Address** | |
|---|---|---|---|---|---|
| | | PARTNERS FOR PAYMENT RELIEF DE IV LLC | | | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF  ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Inst. # 2018019713 - Page 3 of 3

Case 19-18431-SKS Claim 4-1 Filed 04/06/2024 Desc Main Document Page 38 of 40
Exhibit A_Second mortgage_poc 4-1    Page 38 of 40

PREPARED BY & RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **2005 RESIDENTIAL TRUST 3-2 BY WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE  425 Divisadero Street, Suite 207, San Francisco, CA 94117 (Assignor)** by these presents does assign, and set over, without recourse, to ___ ✳ ✳ ✳
_____," _____, **(Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **HUGO M PANDO, AND AMANDI D PANDO, HUSBAND AND WIFE** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS.   Said mortgage **Dated: 10/6/2005** is recorded in the **State of NJ, County of Essex on 10/13/2005, as Book 10796 Page 607 AMOUNT: $ 58,000.00**    TOWNSHIP OF BELLEVILLE Property Address: 132 HORNBLOWER AVE, BELLEVILLE, NJ 07109
IN WITNESS WHEREOF, the Undersigned Entity has caused this instrument to be executed as a sealed instrument by its proper signatory. Executed on: 08/11/2017
2005 RESIDENTIAL TRUST 3-2 BY WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE
 By Park Tree Investments LLC, its Administrator

By: _____
         Connie M. Riggsby, Vice President

State of Texas, County of Tarrant
        On 08/11/2017, before me, the undersigned, personally appeared Connie M. Riggsby, who acknowledged that he/she was authorized to and did execute this instrument as Vice President of/ By Park Tree Investments LLC, its Administrator for 2005 RESIDENTIAL TRUST 3-2 BY WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE   and that he/she executed this instrument as the act of the entity named in this instrument and such execution was done as the free act and deed of 2005 RESIDENTIAL TRUST 3-2 BY WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE   By Park Tree Investments LLC, its Administrator.

JANELL JUNKIN
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, Janell Junkin
My commission expires: August 19, 2019



Partners for Payment Relief DE IV, LLC
920 Cassatt Road, Suite 210, Berwyn, PA 19312
✳ ✳ ✳

NJ  Essex

**FCI Lender Services, Inc.**
Customer Service: **(800) 931-2424**    Fax: **714-282-5775**
Customer Information: **www.trustfci.com NMLS #4920, BRE #01022780**

Report Date: 3/21/2019

# Monthly Statement

| Summary - Repayment Period | | | |
|---|---|---|---|
| Pmt Due Date | 03/25/2019 | Late Charge Due After | 4/9/2019 |
| Annual Rate | 6.500% | Late Charge Due | $0.00 |
| Credit Limit | $58,000.00 | Finance Charges | $434.53 |
| Unpd.Charges | $330.00 | Paid To Date | 04/25/2011 |
| Maturity Date | 10/25/2030 | Next Due Date | 05/25/2011 |

| Account # | |
|---|---|
| Past Due Amt | $52,219.59 |
| Curr.Pmt.Amt | $687.62 |
| Trust/Esc.Pmt | $0.00 |
| Other Payments | $0.00 |
| Deferred Charges | $0.00 |
| **Min.Pmt.Due** | **$52,907.21** |

HUGO M PANDO
132 HORNBLOWER AVE
BELLEVILLE, NJ 07109

| Account Activity | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Reference | Description | Reserve | Impound | Charges | Credits | Balance |
| 02/21/2019 | | Balance Forward | $0.00 | $0.00 | $0.00 | $0.00 | $87,145.32 |
| 03/20/2019 | | Finance Charges | $0.00 | $0.00 | $434.53 | $0.00 | $87,579.85 |
| | | | **$0.00** | **$0.00** | **$434.53** | **$0.00** | |

| Interest Charge Summary | | | | | |
|---|---|---|---|---|---|
| Balance Date | Daily Balance | Days | Daily Periodic Rate | Anual Percentage Rate | Finance Charges |
| 02/21/2019 | $87,145.32 | 28 | 0.017808% | 6.500% | $434.53 |
| | | **28** | | | **$434.53** |

------------------*PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS*------------------

 FCI Payment Coupon
Please do not Staple or Paperclip

 Pay your bill online ($15.00 fee)
https://lirs.trustfci.com/borrower

 Pay by Phone ($18.00 fee)
800-931-2424

**FCI Lender Services, Inc.**

PO BOX 27370
Anaheim, CA 92809-0112
800-931-2424

| Summary - Repayment Period | | | |
|---|---|---|---|
| Past Due Amt | $52,219.59 | **Account #** | |
| Curr.Pmt.Amt | $687.62 | Pmt Due Date | 3/25/2019 |
| Trust/Esc.Pmt | $0.00 | Annual Rate | 6.50% |
| Other Payments | $0.00 | Unpd.Charges | $330.00 |
| Deferred Charges | $0.00 | Credit Limit | $58,000.00 |
| **Min.Pmt.Due** | **$52,907.21** | **Full Address :** | |
| Late Charge Due After | 4/9/2019 | 132 HORNBLOWER AVE | |
| Late Charge Due | $0.00 | BELLEVILLE, NJ 07109 | |

**CUSTOMER SERVICE**

Our Customer Care Department is here to help if you have any questions. Please call us toll-free during regular business hours (Mon-Fri, 8:00 am - 5:00 pm PST) at 1-800-931-2424, x651.

**ERROR RESOLUTION AND REQUEST FOR INFORMATION**

If you believe that there is an error in your account or if you need FCI to provide you with any documentation or information regarding your mortgage loan account, please write to FCI at the following address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 27370, Anaheim, CA 92809-0112; or fax to FCI at 1-714-282-5775. You will need to provide us the name of the Borrower(s), the mortgage loan account number and either describe the error that you believe has occurred or the request for specific information or documentation. We do not accept any requests for either Error Resolution or for documentation and/information over the telephone although you can call us if you have any questions about the Error Resolution and/or Request for Information process.

**CONFORMING PAYMENTS - PAYOR REQUIREMENTS**

The payment coupon must be included with remittance. Payments are to be received in accordance with the periodic payment statement and must include your account number clearly illustrated on the payment instrument. All payments must be received by FCI during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) in order to be credited to Payer's account the same day of receipt. All payments must be payable in U.S. Dollars only and mailed directly to FCI's payment processing P.O. Box set forth in FCI's Periodic Statement and payment coupon. **PARTIAL PAYMENTS** are held in suspense accounts until a full payment is received. At that point, the full payment will be applied to the principal and interest of the first monthly payment to become delinquent or as otherwise referenced in your Note and Security Instrument.

**SERVICEMEMBERS CIVIL RELIEF ACT**

The Service members Civil Relief Act may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty or you are the spouse or dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact our Customer Care Department during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) at 1-800-931-2424, x651.

**MORTGAGE COUNSELING**

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp or the Department of Housing and Urban Development at : http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm , or by calling HUD at 1-800-569-4287.

**NEW YORK CONSUMERS ONLY**

FCI is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920) . Our goal is to provide professional and courteous service to our customers. We welcome your comments and feedback regarding our services. If you have a complaint regarding our services, we ask you to contact us to discuss your concerns. If the need arises, you may file complaints about FCI with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-877-BANK-NYS or by visiting the Department's website at www.dfs.ny.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

--------Please detach the bottom portion of this Statement, return it with your payment, and retain the top portion for your records ----------

**CHANGE OF ADDRESS** *(If correct on front, please do not use)* For change of address over the phone, call our Customer Care Department at 1-800-931-2424, x651. Please Print Clearly in blue or black ink only in the boxes below:

Street Address _____

City_____ State_____ ZipCode_____

Area Code and Home Phone_____ Area Code and Work Phone_____

Email_____

| Property Use? | Market Value of Property? | Email Payment Statements? |
|---|---|---|
| __Primary Residence | | ____Yes, I'd like to receive email statements. |
| __Rental | $_____ | ____No, please don't send me email statements. |
| __Commercial | | |